## TOWNSEND v. SMITH.

Court of Customs and Patent Appeals. Dec. 19, 1929.

Patent Appeal No. 2179.

Arthur B. Jenkins, of Hartford, Conn. (Melville Church and Clarence B. Des Jardins, both of Washington, D. C., of counsel), for appellant.

Harry R. Williams, of Hartford, Conn. (Oscar W. Jeffery, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge. Harry P. Townsend, the appellant, presented his application to the Patent Office on January 13, 1922, praying that a patent might be issued to him on improvements in machines for cutting multiple threads on wood screws. On December 8, 1924, an interference proceeding was instituted and declared between his application and a patent issued to one Henry L. Smith, the appellee, No. 1,452,986, granted April 24, 1923, for a similar invention. The interference counts are seven in number, and are as follows:

"Count 1. An operating mechanism for a wood screw machine comprising a spindle, means for rotating the spindle, a shaft, means for feeding the shaft longitudinally, means for oscillating the shaft on its axis and intermeshing gears between the spindle and the shaft reciprocating and oscillating means, said gears having such ratio that the spindle turns one-half of a revolution more than a full number of revolutions with relation to the reciprocations and oscillations of the shaft, whereby a tool carried by the shaft will start cutting a blank carried by the spindle alternately on diametrically opposite sides.

"Count 2. An operating mechanism for a wood screw machine comprising a spindle, means for rotating the spindle, a rotatory and reciprocatory shaft, a cam for feeding the shaft longitudinally, a cam and connections for oscillating the shaft axially, and intermeshing gears interposed between the spindle and said cams, said gears having such ratio that the spindle turns one-half of a revolution more than a full number of revolutions with relation to the reciprocations and oscillations of the shaft.

"Count 3. An operating mechanism for a wood screw machine comprising a rotatory blank spindle, means for rotating the spindle, a rotary and reciprocatory tool feed shaft, a cam for feeding the shaft longitudinally, and intermeshing gears between the spindle and cam, said gears having such ratio that the spindle turns one-half of a revolution more than a full number of revolutions with relation to the revolutions of the cam.

"Count 4. An operating mechanism for a wood screw machine comprising a rotatory blank spindle, means for rotating the spindle, a rotatory and reciprocatory tool feed shaft, a cam for feeding the shaft longitudinally, and intermeshing gears between the spindle and cam, said gears having such ratio that there is a fractional difference between the relative rotations of the spindle and the feed cam.

"Count 5. An operating mechanisms for a wood screw machine comprising a rotatory blank spindle, means for rotating the spindle, a rotatory and reciprocatory tool feed shaft, a cam for feeding the shaft longitudinally, and intermeshing gears including an idler and change gears interposed between the spindle and the cam, said change gears having such a number of teeth that the spindle turns a number of full revolutions and a fraction of a revolution more to one revolution of the cam.

"Count 6. An operating mechanism for a wood screw machine comprising a rotatory blank spindle, means for rotating the spindle, a rotatory and reciprocatory tool feed shaft, a cam for feeding the shaft longitudinally, and intermeshing gears including an idler and a change gear and pinion having such ratio to each other and to the gears with which they mesh that the spindle turns a number of complete revolutions and one half more to each complete revolution of the cam.

"Count 7. An operating mechanism for a wood screw machine comprising a rotatory blank spindle, means for rotating the spindle, a rotatory and reciprocatory tool feed shaft, a cam for feeding the shaft longitudinally, a swinging profile cam for oscillating the shaft axially, a cut cam for swinging the profile cam, and intermeshing gears between the spindle and the feed and cut cams for driving them synchronously, said gears having such ratio that the spindle turns a number of full revolutions and a fraction more for each action of said cams."

The Examiner of Interferences rendered a decision awarding priority of invention to said Townsend on July 10, 1926. On appeal, the Board of Examiners in Chief rendered a decision on April 15, 1927, reversing the said decision of the Examiner of Interferences, and which decision of said board was afterward, on December 7, 1927, affirmed by the Commissioner of Patents. From the decision of said Commissioner this appeal was perfected.

The sole question at issue in this case is the question of priority as between the appellant and appellee. Townsend claims to have conceived the idea of his invention on or about June 1, 1921. The Examiner of Interferences found that he had done so, while the Board of Examiners in Chief and the Commissioner of Patents, respectively, held that he had not proved such conception by such clear and convincing evidence as is required in such cases.

█ As both applications were co-pending at the time of the inadvertent issuance of the patent to appellee, and as but a short time intervened between the respective dates of application, the burden upon the appellant to prove prior conception is slight, and it is sufficient if he establish his case by a mere preponderance of the evidence. Having this rule, which we consider to be a reasonable one, in mind, we have examined the record carefully to ascertain what the facts are in this regard. The three tribunals in the Patent Office differing in their views as to what this evidence shows, the rule does not obtain here that obtains where all the tribunals agree, namely, that it must clearly and affirmatively appear that there has been some oversight, or mistake, or wrong construction of material facts, or some mistake or misapplication of some controlling principle of law, to justify this court in reversing the decision appealed from. Hien v. Buhoup, 11 App. D. C. 293; Kennicott v. Caps, 49 App. D. C. 187, 262 F. 641; Greenawalt v. Dwight (App. D. C.) 258 F. 982.

Townsend testifies that, while building wood screw threaders for the Ewing Bolt & Screw Company, on or about June 1, 1921, there was trouble with one of his screw threading machines. Townsend was an experienced builder of such machines, and understood them thoroughly at that time. He states that one of the gears had been cut with the wrong number of teeth, with the result that the threading tool, on the moment of initiating each cut on the screw blank, did not start in the same spot that it formerly did, and made a new mark each time the tool passed over the screw. He conceived the idea at the time, and mentioned it to the workmen around him, that this was the way to make a double threaded screw. At that time he was well acquainted with the Caldwell invention of double threaded wood screws. He says he explained it to two workmen, Pond and Clark, but that these men did not recollect it, except Clark recollected that some of the gears were cut wrong. He changed the machine at that time, putting on another gear, after which it cut single threaded screws, as it should have. He states that he thought nothing more about it until October 21, 1921, when he visited Smith and Caldwell at Providence, in answer to a letter informing him that they were interested in a machine for cutting a double threaded screw. He then promised them he would change one of his single threaded wood screw machines, which he was building for a Japanese order, and make it into a double threaded screw machine; that he did this on or about the 10th or 11th of November, 1921, and wrote to Swift November 14th to come and see the machine. On the same day he wrote out the details of his invention for his attorney, for the purpose of making application for a patent. On November 21st the machine was demonstrated, and was afterwards changed back to a single thread machine and shipped to Japan on November 30, 1921.

It is said by the Board of Examiners in Chief and the Commissioner that this testimony lacks corroboration of any kind. Townsend testifies that he did not know that a man by the name of Oscar J. Reeves had witnessed his occurrence of June 1st until about six weeks before the time of the hearing in May, 1925, but that Reeves, at that time, told him he had been present. The Board of Examiners in Chief and the Commissioner both reject the testimony of Reeves on the ground that it is not in harmony with Townsend's testimony, and is not to be relied upon as corroborative. Reeves is not related to either of the parties, and has no interest in the result

of the proceeding. He testifies he was not well, and, in order to put in the time, on frequent occasions visited Townsend's shop where he was much interested in the operation of automatic machinery; that some time before June 17, 1921, which date he fixes by the fact that a short time thereafter he purchased a car and went to the country for his health, staying all summer, he was in Townsend's shop, and Townsend and his helpers were having trouble with a screw threading machine; that they had a wrong set of gearing in the machine which caused it to cut a double thread screw instead of a single thread; that Townsend made adjustments on the machine, and explained each adjustment to those about the machine; that he said at that time the trouble was caused by a wrong set of gears in the machine; that he explained to the men the changes he would have to make on the machine before it was ready for shipment, and so adjusted it that it worked before the witness left, making a single threaded screw after adjustment. Reeves testified, on being shown the drawings, that the adjustments were made on gears No. 42 and No. 43, which are the gears involved in the issue before us. On cross-examination he stated that double threaded screws were made with the machine, at that time, before the gears were changed, and that some of these were distributed among the bystanders.

It is said that, because Reeves goes further in this matter than Townsend, and states that double threaded screws were actually made and distributed at that time, that he must be in error; that his testimony is in conflict with that of Townsend in this respect; and that therefore it should be rejected as corroboration.

█ █ The rule is well settled in this jurisdiction as to what is required to constitute a conception and disclosure of an invention. It is well stated in Mergenthaler v. Scudder, 11 App. D. C. 264. A complete conception as defined in an issue of priority of invention is a matter of fact, and must be clearly established by proof. The conception of the invention consists in the complete performance of the mental part of the inventive act. All that remains to be accomplished in order to perfect the act or instrument belongs to the department of construction, not invention. It is therefore the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice that constitutes an available conception within the meaning of the patent law. A priority of conception is established when the invention is made sufficiently plain to enable those skilled in the art to understand it.

█ Does the alleged conception and disclosure of Townsend, in June, meet these requirements? We are inclined to the belief that it does. It will be remembered that Townsend, accidentally, it is true, had before him, at the time he claims to have conceived the invention, a machine which was actually cutting the threads upon the screw blank in the same manner as the final invention. The only thing required to change the single thread screw machine to a double thread screw machine was the change in gears, which was already an accomplished fact by the error that had occurred. There can be no doubt that Townsend, and those about him, understood perfectly, at that time, just how such a machine could be constructed. This is not such a case as arises when an alleged inventor mentally conceives of some invention and makes an oral disclosure to another, which disclosure may or may not be complete. Here the parties had a complete working model, and there was nothing left to the imagination. The demonstration and disclosure were complete. We can see no reason for discarding the testimony of Reeves on the theory that he testifies screws were made and distributed, while Townsend does not. Townsend did not deny that this happened, nor did any one else. The fact that Reeves went further than Townsend in this regard is not a sufficient fact upon which we should conclude that he committed perjury or was totally mistaken in all that he said.

Another circumstance which leads us to believe Townsend's story has foundation is the fact that, when he was finally called upon to construct a machine on the Swift and Caldwell order, Townsend disclosed fully to these men just how he proposed to make the machine. He went to his shop, according to the testimony of Clark, and informed him that he wanted to set up one of the machines in the shop to cut a double thread; that thereupon the witness Clark and Townsend, "simply took the machine we had, cut a new cam, changed the gears, and cut a double thread on our regular machine." This was but a few days after his interview with Swift and Caldwell, and at this time the idea was so well developed in Townsend's mind that there were no preliminary difficulties in the preparation of the double threaded screw machine. In Townsend's explanation to Swift, according to the testimony of the witness, John W. Caldwell, Townsend was definite and clear as to the method of converting one of his own machines for this purpose.

For these reasons we conclude that the Examiner of Interferences correctly held that Townsend had established conception of this invention in June, 1921. It is agreed that Townsend reduced to practice on November 14, 1921, when he prepared and operated his machine. It is held by all the tribunals in the Patent Office that appellee, Smith, conceived the invention on the 19th or 20th of October, 1921. Appellee does not insist upon any earlier date. Whether this was the exact date of conception we are not now called upon to say, in view of our conclusion in the matter generally. After Smith's conception, no question is raised as to his diligence. He made the necessary drawings and started construction of his machine. According to the preliminary statement in this interference, the appellee, Smith, completed a fully operative machine and operated the same on or about December 12, 1921. This, appellee concedes in his argument, he must rely upon as his date for formal reduction to practice. His preliminary statement is his pleading and he is bound by it. Lindmark v. De Ferranti, 34 App. D. C. 445; Browne v. Dyson, 39 App. D. C. 415. Appellant, Townsend, filed his application for a patent in the Patent Office on January 13, 1922. The Smith application was made on January 3, 1922. No question arises in the case as to the diligence of either Townsend or Smith after October, 1921, when they were each requested to prepare plans for double threaded screw machines by the Commercial Service Company. From that time forward each party moved with all the diligence required by the law.

From what has been said it appears that the appellant, Townsend, was the first to conceive and the first to reduce to practice. This being so, and there being no abandonment or negligence since reduction to practice, Townsend is entitled to priority. It has been argued that after Townsend's conception in June, 1921, he did nothing until October 21, 1921, and that this should be considered such failure to act promptly as to deprive him of the benefit of a claim of priority of conception. We do not understand this to be the law. Where an inventor has established priority of conception, disclosure and reduction to practice, in the absence of any clearly proved abandonment, his right to a patent has not become forfeited either to the public or to his rival. It has been held that a lapse of two years between a reduction to practice and the filing of an application, does not, in itself, constitute an abandonment. Rolfe v. Hoffman, 26 App. D. C. 336.

Townsend had a right, after having conceived and disclosed his invention, to wait until October and he did not forfeit his right to apply for a patent thereby unless someone else, in the meantime, had made the same invention and secured by patent the exclusive right to make, use, and sell it. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Mason v. Hepburn, 13 App. D. C. 86.

We are of the opinion that the Examiner of Interferences arrived at the correct conclusion in the matter, and the decision of the Commissioner of Patents is therefore reversed and priority is awarded to Townsend, the appellant.

Reversed.