**SEPPMANN v. RODEN et al.**

Patent Appeal No. 2538.

Court of Customs and Patent Appeals.

Jan. 12, 1931.

Bair & Freeman, of Des Moines, Iowa (W. P. Bair and Will Freeman, both of Des Moines, Iowa, of counsel), for appellant.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals affirming the decision of the Examiner of Interferences awarding priority of invention to appellees, John J. Roden, Paul W. Quinn, and David C. Roden.

The alleged invention relates to an automobile brake-testing device.

Count 3 is illustrative of the five counts involved in the issue. It reads:

"3. A brake-testing device adapted for application to a vehicle wheel and comprising a primary lever, a secondary lever pivoted to the intermediate portion of said primary lever, grapple-acting bars pivoted to said primary lever at different points, and a spring scale applied between said primary and secondary levers and serving to indicate force applied to said secondary lever in a direction to rotate the wheel, said grapple-acting bars at their free ends being engageable with the exterior of a wheel tire to which the device is applied."

Appellees filed their application on March 5, 1924, and a patent was issued to them on January 23, 1925.

Appellant's application was filed on January 19, 1927.

Appellees, relying upon their filing date, submitted no testimony.

Considerable evidence was submitted by appellant in an effort to establish conception and reduction to practice as early as July 8, 1922.

Appellant testified that he owned and operated a garage on his farm near Lake Crystal, Minn.; that for many years he had been engaged in inventing various kinds of new and useful tools and apparatus for use in con-

nection with the repair and adjustment of various parts of automobiles; that prior to July 8, 1922, appellant recognized the need of a device to aid mechanics in making brake adjustments for automobiles; that he conceived the idea of a device "that would clasp over the wheel in the form of two hooks, which could be connected to scales, and a handle to pull on to turn the wheel, which then would register on the scale in pounds, which that brake would create"; that he made and discarded certain models of the alleged invention; that on July 8, 1922, he constructed a device that corresponds to the counts in issue and tested it on an automobile in the presence of two witnesses—his brother, Henry W. Seppmann, and his employee, Leo Peterson. Appellant also said that he stamped the date—July 8, 1922—on his device shortly after he tested it; that the test was satisfactory; that he disclosed the invention and explained it to the witnesses, Thompson and Hance, and, also to one Bruno Hanel, who did not testify in the case; that he tested it several times thereafter; and that it worked satisfactorily. The witness identified Exhibits 1 and 2 as his original device. He said that his invention had been in his garage since it was completed and tested in 1922. He then said: "Q26. And has it been in its present form since it was made? A. Yes, with this exception, of the scale, which I took off and used around the house, and I have now put the scale back on."

The witness H. E. Hance testified that he had known appellant for many years prior to July 8, 1922; that appellant had talked to him many times about various devices, including the alleged brake tester, in an effort to secure his co-operation, financially, in order that appellant might place his "patented devices on the market"; that on February 5, 1923, the witness opened an account in the First National Bank, in the name of "Hance & Seppmann," and deposited $500 to the credit of the partnership; that he learned about appellant's idea of a brake-testing apparatus some time in 1921; that he saw it tested on his car in the presence of the witness Peterson shortly after July 8, 1922; that it worked satisfactorily; and that he had seen appellant's device since July, 1922, in a "cupboard with the rest of the special tools, upon which Mr. Seppmann was working."

The witness Leo Peterson testified that he was employed in appellant's garage during the year 1922, and until the summer of 1923; that he recognized Exhibits 1 and 2 as the brake tester constructed by appellant; that he saw appellant stamp the date—July 8, 1922—on the exhibits; and that he assisted appellant in testing the device on July 8, 1922.

The witness Henry W. Seppmann testified that he was a brother of appellant; and that he had seen appellant's alleged invention used some time during the year 1922.

The witness L. E. Thompson testified that he had known appellant for fifteen years; that in July, 1922, he was the "foreman of the Triangle Motor Company, Mankato, Minnesota, who handled Hudson and Essex cars"; and that he saw appellant's device tested on an automobile, some time between the 10th and 20th of July, 1922, on which occasion "Mr. Seppmann asked me whether or not I thought this [referring to the device he had seen tested] would be a practical tool, and I certainly thought it would, and I told him so."

The witness Arthur Albrecht testified that he had become acquainted with appellant through the driving of racing automobiles; that in 1922 he worked for the New Ulm Manufacturing Company of New Ulm, Minn.; that, while he was engaged in selling piston pins, he called at appellant's garage in the latter part of September, 1922, and saw appellant's device tested; and that, in his opinion, it worked satisfactorily.

The witness Romie Schaible testified that during the month of November, 1922, he was employed by a construction company at Billings, Mont.; that he happened to be at Seppmann's garage on Thanksgiving Day 1922; that, on that day, appellant showed him his brake tester—Exhibits 1 and 2—and explained it to him; and that later "he actually worked it on my own car," and "it worked good, and the brakes were equalized."

In awarding priority of invention to appellees, the tribunals of the Patent Office concurred in holding that, although appellant had conceived and reduced the invention to practice in the summer of 1922, his failure to file an application for a patent for more than five years thereafter and more than one and one-half years after a "patent had been granted to his more diligent rivals," in the absence of a proper explanation of the long delay, indicated that appellant had abandoned the invention, until he was spurred into activity by the knowledge that appellees had perfected the invention and had obtained a patent thereon; and that, therefore, as stated in the opinion of the Board of Appeals, "the law would consider the subsequent inventor as the one entitled to the benefits of the Statutes."

188

It appears from the record that appellant filed his application for a patent more than five years after he claims to have reduced the invention to practice, more than two years and ten months after appellees filed their application, and approximately one year and seven months after a patent had been issued to appellees; that he did not file his application until after he had been informed by his attorney of the patent issued to appellees; and that, for more than five years after he claims to have reduced the invention to practice, his device, with the scale removed, was lying unused, along with other "special tools," in a cupboard in his garage.

As appellant's application was not filed until after a patent had issued to appellees, he had the burden of establishing priority of invention beyond a reasonable doubt.

Appellant offered no explanation of the long delay in filing an application for a patent.

In view of the fact that the witness Hance, on February 5, 1923, deposited $500 in the bank to the credit of the partnership of "Hance & Seppmann" for the sole purpose of aiding appellant in utilizing to advantage his alleged inventions, it is evident that appellant was financially able to file an application for a patent for his alleged invention, if he had been of the opinion that it possessed sufficient merit.

Appellant and his witnesses, Hance, Albrecht, and Schaible, each testified that he had seen appellant's device tested, and that, in his opinion, it worked satisfactorily.

It does not clearly appear from the record that any one of these witnesses, except appellant, was competent to express an opinion as to the successful results of the tests he had observed, and it may be noted in this connection that appellant's garage mechanic—the witness Leo Peterson, who assisted appellant in making his alleged device and aided him in testing it on July 8, 1922, did not testify that it operated successfully on that occasion. Curiously enough, he did not testify that he had ever witnessed any other tests, although he continued to work in the garage from July 8, 1922, until the summer of 1923. It will be observed that, after the device was tested in the presence of the witness Thompson, some time between the 10th and 20th of July, 1922, appellant inquired of Thompson whether he thought his device "would be a practical tool."

It is true that appellant testified that the tests he made during the period from July to November, 1922, were satisfactory. Nevertheless, there is nothing in the record to indicate that appellant was of the opinion that he had invented a new and useful article until after he had learned that a patent had been issued to appellees for a similar invention. Not only has appellant failed to prove his case beyond a reasonable doubt, but his conduct, subsequent to the alleged successful tests, clearly indicates a complete lack of appreciation of the usefulness of his device. Accordingly, this court is warranted in presuming that appellant did not reduce the invention to practice during the summer and fall of 1922, and that the tests then made were, in fact, merely abandoned experiments. Vanore v. Improta, 58 App. D. C. 130, 25 F.(2d) 918. However, the decision need not rest upon this proposition. For, if appellant completed his invention, as held by the Board of Appeals, the evidence is inconsistent with any conclusion other than that he deliberately and willfully postponed his claims to a patent and withheld his invention from the public for the purpose of securing an advantage not warranted by the patent laws. Accordingly, a "principle akin" to the doctrine of equitable estoppel is applicable, and appellant is not entitled to an award of priority. Kendall et al. v. Winsor, 62 U. S. (21 How.) 322, 16 L. Ed. 165; Mason v. Hepburn, 13 App. D. C. 86; In re Mower, 15 App. D. C. 144; Donald A. Miller v. Eber J. Hayman, 46 F.(2d) 188, 18 C. C. P. A. ——, decided concurrently herewith.

For the reasons stated, the decision is affirmed.

Affirmed.