## BRYDLE v. HONIGBAUM.
### Patent Appeal No. 2750.

Court of Customs and Patent Appeals.
Dec. 17, 1931.

LENROOT, Associate Judge, dissenting.

For former opinion, see 49 F.(2d) 963.

Charles M. Thomas and Francis D. Thomas, both of Washington, D. C. (Arlon V. Cushman, of Washington, D. C., of counsel), for appellant.

Cornelius Zabriskie, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

In Brydle v. Honigbaum, 49 F.(2d) 963, 18 C. C. P. A. 1517, an opinion was filed in this case and an order entered reversing the decision of the Board of Appeals of the United States Patent Office and remanding the matter for further action by said office. In considering the case in the first instance, it became quite apparent to the court that to award priority on the counts of the interference, as framed by the Patent Office, might result in an injustice to the parties, for reasons assigned in said opinion. The order made by the court was, so far as was within the power of the court, to obviate any such injustice by a reforming of the counts of the interference.

Upon June 19, 1931, appellee, through his counsel, filed a petition for rehearing herein, alleging, inter alia, that the parties have had their day in court, and requesting a decision on the issue of priority as made by the pending counts. Appellant, on his part, files a reply to said petition, likewise insisting on such a decision.

As the parties, therefore, seem unwilling to avail themselves of the opportunity presented by this court's former decision in the matter, the court will pass upon the matter as presented by the pending counts of the interference. Accordingly, the petition for rehearing is allowed, and the matter will be determined on the record and briefs as presented, without further oral argument.

In passing upon the issue of priority now presented, the statement of facts made in Brydle v. Honigbaum, supra, will not be repeated here.

As stated in our opinion in Brydle v. Honigbaum, supra, the Board of Appeals held that the construction of the panel board by Brydle in July, 1922, was a sufficient reduction to practice. We agree with that conclusion. In view of the prior art, we think preparation of the asbestos shingles and the

construction of a panel thereof in a satisfactory way was a sufficient reduction to practice. The case cited by the Examiner of Interferences, Crabbs v. Wardell, 57 App. D. C. 241, 19 F.(2d) 715, held that the preparation of a slab of asphaltic waterproof roof covering was not a sufficient reduction to practice without exposure of the same to weather conditions. It will be noted, however, that in that case the court expressly called attention to the fact that such roofing was a new product, and that its qualities were comparatively unknown. In this case, if Brydle had been a pioneer in the art of making shingles of this material, then we would be of the opinion that the preparation of his panel would not be a sufficient reduction to practice. However, the art being established, and the qualities of this particular composition being well-known, the case is different and the reduction to practice is sufficient.

It is argued by counsel for appellant that inasmuch as the Board of Appeals held that the construction of the panel board in question was a reduction to practice, and also affirmed the decision of the Examiner of Interferences in refusing the right to amend the preliminary statement, it follows that the Board of Appeals must have concluded that the evidence as to said reduction to practice could not be considered by the board, and was inadmissible as a matter of law, because it showed a construction of said panel board in July, 1922, instead of between October 1st and December 20th, of the same year, as alleged in the amended preliminary statement. If the board had held otherwise, it is argued, priority must have been awarded to Brydle, because his date of reduction to practice as alleged, namely, between October 1 and December 20, 1922, is prior to Honigbaum's filing date, namely, April 27, 1923.

It seems to be a fair inference that such must have been the holding of the Board of Appeals in the matter, unless it may be inferred from its decision that the board found that, irrespective of the date of conception and reduction to practice, Brydle should be barred because of his lack of diligence after Honigbaum entered the field. Appellant contends that he is entitled to his date of reduction to practice as claimed in his preliminary statement, if, in fact, he has, by the evidence, established a reduction to practice at some earlier date.

This matter is not free from difficulty. We are of the opinion, however, that much light is thrown upon it by the consideration of a portion of rule 110 of the United States Patent Office, relative to the practice in interference cases, and a part of which rule is as follows: "If a party prove any date earlier than alleged in his preliminary statement, such proof will be held to establish the date alleged and none other."

These rules have the force and effect of law. Fish v. Dyson, 55 App. D. C. 209, 4 F.(2d) 175.

This matter has been considered several times by the Court of Appeals of the District of Columbia, which court had jurisdiction of these matters before the jurisdiction was transferred to this court. The first case called to our attention is Colhoun v. Hodgson, 5 App. D. C. 21. There the court held that the date of the invention as given in the preliminary statement will be considered conclusive on the party, and that testimony of conception by him of the invention prior to such date will not be considered for the purpose of changing such date. That case was cited in Cross v. Phillips, 14 App. D. C. 228. In the case cited, one of the parties, without offering to amend his preliminary statement, undertook to prove that he reduced his invention to practice prior to the date shown in his preliminary statement. The court held that this testimony, without amendment, was inadmissible and entitled to no consideration. It will be observed that in the case just cited, the court found that Phillips had reduced his invention to practice about four months prior to the date alleged in Cross's preliminary statement, and this being true, and Cross being restricted to his date alleged in his preliminary statement, it would seem to follow logically that the evidence in question would be immaterial for any purpose.

Lowrie v. Taylor, 27 App. D. C. 522, 524, was on the same subject. In this case, the party Taylor's preliminary statement alleged conception and disclosure about May 1, 1900, and a reduction in September, 1900. A sample of the device was introduced in evidence, which was shown to have been made in May, 1900, and hence would have been, if proper allegations had been made, a reduction to practice at that time. The court said, in discussing this matter: " * * * We agree with the tribunals of the Patent Office that if this exhibit were admissible for the purpose of showing a reduction to practice as of the date of its construction it would be sufficient to constitute a reduction to practice by Taylor and Taylor; but, unfortunately for them, under the rules of the Patent Office they are bound by the allegation of their preliminary statement that they did not

reduce to practice the invention of the subject-matter of this count until September, 1900. The Patent Office tribunals are not permitted to ignore the rules lawfully established for the taking of testimony in interferences; and in appeals in such cases from the Patent Office we are equally bound. We are therefore unable to give any earlier date of reduction to practice to Taylor and Taylor than that alleged in their preliminary statement."

The matter came up before this court in Nolop v. Smith, 36 F.(2d) 838, 839, 17 C. C. P. A. 768, and in that case we said: "It is well established that testimony taken by a party to an interference to show disclosure or reduction to practice prior to the date set forth in his preliminary statement, without amendment of such statement, is inadmissible, and will not be considered."

This statement, it is argued by counsel, is a holding that evidence offered to prove a date other than that shown in the preliminary statement is inadmissible for any purpose. The quotation just recited must be considered together with rule 110 of the Patent Office, heretofore quoted, and was not intended by this court to be considered as a holding by us that no such evidence was admissible for any purpose, but rather that evidence showing a date of conception or reduction to practice earlier than that alleged in the preliminary statement was not admissible and could not be considered for the purpose of establishing an earlier date than so alleged.

■ We are of opinion that a reasonable interpretation of rule 110 of the Patent Office, and of the decisions of the Court of Appeals of the District of Columbia, and of this court in Nolop v. Smith, supra, will lead to the conclusion that a party may introduce proof of a date of conception or reduction to practice earlier than that alleged in his preliminary statement, but it is only admissible for the purpose of establishing that on the respective dates alleged by him in his preliminary statement he had conceived or reduced to practice, as the case might be, the invention in question. For any other purpose it is inadmissible. Cases may arise in which evidence may be offered of a date so remote from the date alleged in the preliminary statement as to raise a doubt as to the character and credibility of such evidence, but this does not affect the principle of law involved in such cases.

The evidence as to conception by Honigbaum consists of the testimony of himself and his wife. He testified that he conceived the invention, the subject-matter of the interference, about June 25, 1922, and that upon July 6, 1922, he made a full sized shingle and showed it to his wife. His wife stated that she was in the garden on July 6, 1922, and that Honigbaum came up from the basement and showed her a "diamond shaped shingle, it had a sort of a narrow wing on it." Nothing more of a disclosure by Honigbaum appears from the record until shortly prior to Honigbaum's application on April 27, 1923, when he states that he showed his shingle to his attorney who filed the application.

■ We do not consider this as satisfactory proof of conception and reduction to practice. It is, substantially, the uncorroborated testimony of the applicant, which has never been considered sufficient in such cases. Janette v. Folds, 38 F.(2d) 361, 17 C. C. P. A. 879. There is in the record, as we view it, no sufficient proof of either conception or reduction to practice by Honigbaum until the said date of filing on April 27, 1923.

■ We therefore conclude, from the record, that the party Brydle was the first to conceive and the first to reduce to practice the subject-matter of the counts in interference here.

Both tribunals in the Patent Office seem to have considered this matter on the basis that there is no patentable distinction between the shingles described in the applications of the parties and the shingles reduced to practice by Brydle in 1922. We are not disposed to enter that controversial field here. The only issues made by the parties in the tribunals of the Patent Office and here are: First, as to the priority of conception and reduction to practice of the subject-matter of the counts of the interference; and, second, as to the application of the doctrine of Mason v. Hepburn, 13 App. D. C. 86, on account of the alleged delay of Brydle to file application after Honigbaum entered the field. The matter will be determined on the points thus raised by the parties.

■ Brydle having been found to be the first to conceive and the first to reduce to practice, shall he be precluded here from an award of priority because he waited from the time Honigbaum entered the field, namely, April 27, 1923, until October 21, 1924, before filing his application? No burden of diligence rested upon Brydle to file his application after he had reduced the same to practice. Harlan v. Bregman, 39 F.(2d) 494, 17 C. C. P. A. 949; Townsend v. Smith, 36 F.(2d) 292, 17 C. C. P. A. 647.

If, however, Brydle, having conceived and reduced to practice, abandoned his invention, or deliberately concealed or suppressed it, he will be barred by a doctrine akin to estoppel. Mason v. Hepburn, supra; Seppmann v. Roden, 46 F.(2d) 186, 18 C. C. P. A. 831; Miller v. Hayman, 46 F.(2d) 188, 18 C. C. P. A. 848; Hedenskoog v. Backus, 48 F.(2d) 408, 18 C. C. P. A. 1065.

It is well said by counsel for Brydle that there is no intimation anywhere that Brydle made any attempt to conceal his invention from the public. He had his panel exhibited on his premises over a long period, where any passer-by could see it. It is more than probable that the party Honigbaum did see it in passing through the plant.

Nor is there any proof of abandonment on the part of Brydle. He testified that he had one Brownrigg employed as his patent attorney, at or about the time of his reduction to practice of the shingles in issue. Brownrigg, deceased before the hearing herein, wrote to Brydle on October 21, 1922, suggesting to him the adoption of a certain form for his shingle in his application, which form was the double tabbed form. This letter and other correspondence between Brydle and his said attorney are in evidence, and, in our opinion, substantially corroborates the testimony of Brydle. This correspondence resulted in an application dated December 6, 1922, which resulted in Brydle's patent, No. 1,512,400, dated October 21, 1924.

Said patent was for a composition shingle with a lowermost corner adapted to be turned back as an anchoring tab. Brydle testified that he had instructed Brownrigg to include the tabbed shingle idea in this application, and thought the application included the ideas embodied in his application here, and knew nothing different until he first saw his patent on October 21, 1924, immediately after its issuance. Thereupon he asked his attorney if the issued patent included his tabbed shingle, was told it did not, and at once proceeded to file the present application on the same day.

This is far from sufficient to establish any abandonment on the part of Brydle. There being no suppression, concealment, or abandonment by Brydle, it seems quite clear that he should be awarded priority. A motion has been made by the appellee to strike from the files certain portions of appellant's reply to appellee's petition for rehearing. The motion is denied. The decision of the Board of Appeals is reversed, and priority will be awarded to the junior party Brydle on all counts of the interference.

Reversed.

LENROOT, Associate Judge (dissenting).

I cannot assent to the conclusion reached by the majority in this case, because I do not believe that appellant has sustained the burden of proof resting upon him as the junior party.

A careful reading of the record in this case leads me to the conclusion that appellant should not be held to have been the first to conceive and reduce to practice the invention here involved, but that the acts of appellant which the majority holds constitute a reduction to practice by him should be regarded only as an abandoned experiment.

Nowhere in his application does appellant describe or show the form of shingle which he claims to have conceived and reduced to practice in 1922, but, on the contrary, his application shows only a shingle which he testified he did not invent.

The testimony shows that prior to July, 1922, there was in use a patented shingle known as the Arro-Lock shingle, which had slits extending inwardly from opposite points on the lateral margin of the shingle, adjacent to the lower corners, and that such shingles were being used in July, 1922, by the Tilo Roofing Company, of which appellant was president.

Appellant testified that upon July 3, 1922, he observed the difficulty that the workmen had in opening up the slits of the shingles by use of their thumbs, and that he then conceived the idea of lessening the labor cost of laying that type of shingle by changing the slit into a notch. Upon this point he testified as follows:

"Q. How did you propose to bring about this result? A. I thought, instead of having this slot that had to be broken down each time a shingle was laid, if a notch was cut out of the side of the shingle it would save the labor cost of breaking down the slit, which would reduce the cost of laying the shingles materially."

He then testified that on July 4, 1922, he made a number of shingles embodying his idea, to cover a panel board 3½ or 4 feet square, and that such structure was fastened on the outside of the warehouse on about the slant of a roof, where it remained for some considerable length of time, after which it

was placed in an outbuilding on the premises of the warehouse, where it was found in the fall of 1927, more than five years after it was made. It is apparent from the testimony that appellant's only thought or conception in making the shingle, which the majority holds constituted a reduction to practice, was to improve upon the Arro-Lock shingle by providing a notch instead of a slit, thus doing away with the necessity of the workmen, in laying the shingles, breaking down the slit with their thumbs.

Appellant's application here in issue was filed on October 21, 1924, and his specification shows that at that time he condemned the very type of shingle which he now says he invented. In his specification he states:

"* * * In the prior art the most common method of anchoring the lowermost corners of composition shingles is dependent upon the use of *notches or slits extending inwardly* from opposite points on the lateral margin of the shingles adjacent the lower corner and the placing of the marginal portions of underlying shingles in such notches or slits to thereby hold the exposed lower corner of the overlying shingle in position. This construction and arrangement has been open to the objection that *the notches or slits produced a weakening effect on the shingles* and, in addition, the inserted edges of the adjacent shingles produced an abrupt bend in the material of the shingle at the inner edges of the slits and tended to tear or check the material of the shingle and destroy its usefulness.

"The present invention consists of the use of anchoring members formed by lateral extensions on the lowermost extremity of the body portion of the shingle itself. In other words, *instead of impairing the usefulness of the shingle by placing notches or slits therein*, I achieved the desired function by the provision of lateral extensions or by a lateral expansion of a corner portion of the shingle to thereby provide anchoring tab members which do not in any way *detract from the strength of the main body portion of the shingle*." (Italics ours.)

It will be observed from this quotation that he was then of the belief that the notch in the shingle represented by the panel board in evidence, regarded by the majority as a reduction to practice, produced a weakening effect on the shingles, and that he had invented the shingle shown in his drawings and in the application of appellee, which did not include the notch in the body of the shingle, stating, to repeat from the above

quotation: "* * * In other words, instead of impairing the usefulness of the shingle by placing notches or slits therein, I achieved the desired function by the provision of lateral extensions or by a lateral expansion of a corner portion of the shingle to thereby provide anchoring tab members which do not in any way detract from the strength of the main body portion of the shingle."

It therefore appears that it was appellant's idea in 1924 that the shingle which he says he invented in July, 1922, was open to the objection that the notch produced a weakening effect on the shingle and detracted from the strength of the main body portion of the shingle.

It further appears from the evidence that after this alleged invention and reduction to practice in 1922 of the notched shingle, which the majority finds constituted a reduction to practice, appellant made an application for patent for an improved type of shingle and received a patent therefor, but in such application and patent no mention is made of his notched shingle of 1922. Appellant attempts to explain this by testifying that he supposed that said notched shingle was included in said last-named patent, which was issued on October 21, 1924, and that after he received the same he asked his attorney if his 1922 shingle here referred to was covered by the patent, and was informed by his attorney that it was not. Appellant further testified that upon receiving such information it was agreed between himself and his attorney that he would file the application here in issue. As before stated, appellant's application here involved was filed on October 21, 1924, the very date that said patent was issued, which patent, appellant testified, he did not see until "soon after" it was issued, so it is evident that there could have been no omission in the patent of October 21, 1924, the observance of which caused appellant to file his present application.

Appellant's testimony as to his explanation for not including his notched shingle in his 1922 application is completely refuted by the evidence in the case. The record shows that in the early part of 1924 or in the late fall of 1923, appellant, being informed of the invention claimed by appellee herein, and that he had filed application for patent therefor, entered into negotiations with appellee for a license to manufacture the shingle covered by appellee's application; that said negotiations did not result in appellant's securing a license from appellee; and that during the course of such negotiations appellant

never told appellee that he had invented a similar shingle. When asked to give his reason why he did not so tell him, appellant replied: "I didn't see any way this shingle resembled or was comparable to the shingle I had made application on." It will be observed that at the time of these negotiations appellant had not filed the application here in issue, and he evidently was referring to the application upon which he secured a patent on October 21, 1924, which further refutes his attempted explanation that he thought his patent of October 21, 1924, covered the shingle which he claims to have invented in 1922.

The testimony also establishes that during the course of the negotiations between appellant and appellee, whereby appellant attempted to secure a license from appellee for the manufacture of the shingle covered by appellee's application, appellee placed in the hands of appellant's attorney a copy of appellee's application here in issue and his entire file with reference thereto, for the purpose of convincing appellant that he had a valid application pending and was entitled to a patent thereon for the shingle shown in his specification and drawings. It is thus established that at the time that appellant filed his application here in issue he had full knowledge of appellee's application and the exact invention therein described. This, coupled with his positive admission in the record (hereinafter adverted to) that he did not invent the specific shingle shown in appellee's application, which is the same shingle shown in appellant's application, is convincing to me that appellant had abandoned any idea that his shingle of 1922 constituted any invention whatever, and that he was of the opinion that his construction of 1922 of a notch in the body of the shingle would weaken the shingle and detract from its usefulness. Thus it appears that not only did appellant's construction of the shingle and panel board of 1922 not convince him of the utility of such a shingle, but that he was satisfied that it was not of utility for the reasons stated. In view of this fact it is only fair to assume, as did the Board of Appeals, that the mere construction of the panel board did not establish its utility, and that, to constitute a valid reduction to practice, it should have been put to actual use upon a roof exposed to the elements and its utility thus demonstrated. However this may be, the conduct of appellant, clearly established by the evidence, is convincing that he regarded his shingle of 1922 as an abandoned experiment only.

The record shows that on cross-examination appellant testified as follows:

"Q. And you make no claim of being the inventor of any shingle which has tab ends extending beyond the shingle itself? A. I do not."

Yet the only shingles shown in appellant's specification and drawings are shingles in which the tab ends extend beyond the shingle itself. This, together with the fact that when appellant made his application here in issue he had had access to appellee's application, together with the further fact that he sought to secure from appellee a license to manufacture the specific type of shingle shown in his own application subsequently filed, convinces me that appellant derived the invention from appellee, and that it was appellee's disclosure alone that was the basis of and the reason for appellant's application for patent here in issue.

In view of all these facts, I am clearly of the opinion that appellant, being the junior party, has not sustained the burden of proof entitling him to an award of priority, and the decision of the Board of Appeals should be affirmed.