**ELECTRO–METALLURGICAL CO. et al. v. KRUPP NIROSTA CO., Inc.**

**No. 7471.**

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

Rehearing Denied Aug. 26, 1941.

Leonard A. Watson, of New York City (Hugh M. Morris, of Wilmington, Del., and Watson, Bristol, Johnson & Leavenworth and D. A. Woodcock, all of New York City, on the brief), for plaintiffs.

Fritz V. Briesen, of New York City (Southerland, Berl, Potter & Leahy, Ward & Gray, and C. A. Southerland, all of Wilmington, Del., on the brief), for defendant.

Before BIGGS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

This appeal involves a suit under Revised Statutes § 4915, 35 U.S.C.A. § 63, for a decree entitling the plaintiff, Electro-Metallurgical Company, to receive a patent for the invention specified in claims 1, 2 and 9 of a patent awarded to Paul Schafmeister, who assigned his rights therein to the defendant, Krupp Nirosta Company, Inc. Schafmeister was originally joined as a party defendant but the bill of complaint was dismissed as to him upon his filing a disclaimer in the court below.

The plaintiff, Electro-Metallurgical Company, is the owner of patent application Serial No. 593,928 filed by the other plaintiffs, Frederick M. Becket and Russell Franks, on February 18, 1932. Krupp Nirosta Company, Inc., is a Delaware corporation and is the owner of patent application Serial No. 550,288 filed by Schafmeister on July 11, 1931. In the oath accompanying Schafmeister's application reference is made to the fact that an application for a German patent of the same invention had been filed on July 21, 1930.

Interference between the above applications having been declared in the Patent Office, the Examiner of Interferences awarded priority of invention to Schafmeister and refused to grant a patent to Becket and Franks on their application. This decision by the Examiner of Interferences was affirmed by the Board of Appeals in the Patent Office on October 1, 1937. The Commissioner of Patents thereupon refused a patent to Becket and Franks. The plaintiffs did not appeal to the Court of Customs and Patent Appeals from the decision adverse to them in the Patent Office, but instituted the present suit in the court below.

Each of the applications is concerned with a means or process for preventing internal (intergranular) corrosion in stainless steels. The invention in issue thus relates to an austenitic chromium nickel steel,—an alloy known as "18-8" steel, so named because it contains 18% of chromium and 8% of nickel. Stainless steel is practically immune to surface corrosion, but when subjected to a certain range of temperature (variously 400° to 900° C.) and to a corrosive, the chromium, which in itself protects iron against corrosion, combines with the carbon in the steel to form chromium-carbide. The resultant chromium-carbide is deposited at the grain boundaries in the granular structure of the steel and deprives the individual grains of their protective chromium. Thereby it becomes possible for the corrosive to attack the iron. The ensuing damage to the internal structure of the steel, when subjected to the deleterious range of temperature, was a difficulty encountered in welding the steel or when the steel was used in chemical apparatus or in certain industrial operations such as oil cracking. If the carbon could be tied up by being brought into chemical combination with some suitable metal, it would no longer be free to unite with the chromium which, remaining in place as chromium, would continue to protect the grains of iron against corrosion. How to tie up the carbon in the alloy so that the chromium would be unaffected throughout the carbide-precipitation range of temperature was the problem to which the respective applicants addressed themselves.

The subject matter of the interference, as defined by the Examiner of Patents, was in ten counts, but the plaintiffs have limited their suit to counts 1, 2 and 9, which read as follows:

"1. A corrosion-resisting steel containing about 18% chromium, about 8% nickel, .07% to .2% carbon and from 0.3% to 2.5% of an additional material acting to lessen materially loss of corrosion resistance on prolonged holding at 500° C., the balance substantially all iron, said additional material consisting substantially all of columbium.

"2. A corrosion-resisting steel containing about 12% to 30% chromium, about 7% to 25% nickel, about 0.07% to 0.2% carbon, and from 0.3% to 2.5% of an additional material acting to lessen materially loss of corrosion resistance on prolonged

holding at 500° C., the balance substantially all iron, said additional material consisting substantially all of columbium.

"9. A metal article which in its normal use is subjected to active corrosive influences while the metal in at least part of the article is in a condition resulting from heating at ranges within the carbide precipitation range (approximately 500° to 800° C.) without subsequent heating at substantially higher temperatures, said article being resistant to said corrosive influences and composed of a corrosion-resisting austenitic steel, the iron of which is substantially all in the gamma form, containing about 12% to 30% chromium, about 7% to 25% nickel, about 0.07% to 0.2% carbon, and from 0.3% to 2.5% of an additional material consisting substantially all of columbium and tantalum, the balance substantially all iron."

Prior to the discovery that an addition of columbium and tantalum to the steel alloy would improve its resistance to internal corrosion, the problem had been a difficult one in the art. Dr. Strauss of Germany, who had invented "18-8" steel about 1912, sought to eliminate internal corrosion by reducing the carbon content of the steel to .07% maximum, and in 1928 he disclosed that the reduction in carbon which he prescribed was helpful in preventing internal corrosion. However, the process of avoiding chromium carbide (when the steel was heated to a temperature within the deleterious range), by reducing to a minimum the carbon content of the steel, was both difficult and costly. It was then that Schafmeister and a colleague, Houdremont, who were working with Strauss at Krupp's in Germany, made a new approach by introducing titanium into the steel in order to engage the carbon in titanium carbide and thus keep the carbon from combining with the chromium. An application for a German patent of this process was filed by Krupp on June 26, 1929, and is in evidence in this case. The court below says that "By this procedure the trouble-maker was eliminated" and that the plaintiffs, Becket and Franks, "learned of this treatment in America and started their staffs of chemists to work." The appellants complain that there is no proof in the record to support these statements. We have examined the plaintiffs' Table F upon which the court below relied as showing that the plaintiffs were following the Schafmeister (Houdremont) titanium

teaching and can see no more there than that the plaintiffs did make tests with zirconium, vanadium and titanium with, as the table shows, unsatisfactory results. In Schafmeister's American petition of 1931, based upon his German application of July 21, 1930, he specifies "considerable success" from the use of "elements such as titanium or vanadium" in the treatment of austenitic chromium nickel alloys.

In Schafmeister's 1930 German application, he set forth that extensive experiments had shown that the benefits to be derived from the use of titanium or vanadium (alone or in combination) in the alloy were also to be derived from niobium (columbium), tantalum, zirconium, uranium, hafnium, and other rare earth metals. He also set forth that it is advantageous in the use of these elements, as in the case of titanium, to establish such a relation of the stated alloy components with respect to the carbon that practically the entire amount of carbon is bound to the added alloy components. The application further stated that it was especially advantageous to use as the added alloy component one or both of the elements niobium (columbium) and tantalum, since these elements not only combine with the carbon in a manner which does not deleteriously affect the chemical and mechanical stability of the alloy but they furthermore result in particularly good welding conditions.

It was on the basis of this German application and Schafmeister's corresponding American application that the Commissioner of Patents (after decision by the Examiner of Interferences and the Board of Appeals) decided that Schafmeister was entitled to the date of his German application, namely, July 21, 1930. (Between July 10 and July 21, 1931, both inclusive, Schafmeister filed additional patent applications on the basis of his German application in Austria, Sweden, Czechoslovakia, Great Britain, France and Canada.)

Becket and Franks first conferred about the problem of "intergranular corrosion" on May 23, 1929. On October 9, 1929, they made a batch of the "18-8" alloy, known in this case as "Heat A-722", which contained low carbon and an addition of columbium and tantalum in a ratio allegedly of five to one, respectively. The evidence on this point is in conflict and the exact ratio between the columbium and tantalum is in dispute. The plaintiffs claim that they knew the ratio because they had

only one supply of ferro-columbium-tantalum in the laboratory and that it had the five to one ratio. On the other hand, the defendant proved that an analysis of "Heat A-722" made on October 24, 1929, showed approximate tantalum content of .19% and columbium content of .16%. From a memorandum of the plaintiffs, the defendant also introduced doubt as to the identity of the ferro-columbium-tantalum used in "Heat A-722". The memorandum showed that the ores used in that heat had been kept in an outside building where other ferro-columbium ores were kept. From this point onward the evidence shows intermittent tests by the plaintiffs with no disclosure of a discovery in the art which they could explain. They tried other processes, including "heat stabilization" and the substitution of "chromium manganese", which are entirely foreign to the matter at issue in the present case. The plaintiffs then filed their application on February 18, 1932, still laboring on an empirical discovery which they thought was to be perpetuated on the basis of the 1929 analysis. In their application they say that "The improvement constituting the present invention was evolved empirically, and we have as yet found no entirely satisfactory theoretical explanation.". A reanalysis of "Heat A-722" was made on May 27, 1932, and it was shown thereby that the metal in fact contained .44% columbium and .06% tantalum. This is important for it is the plaintiffs' claim that they had with certainty reduced their discovery to practice before Schafmeister had reduced his to practice. The defendant contends that with such uncertainty existing as to the content of "Heat A-722" there could be no reduction to practice at the time claimed by the plaintiffs.

The plaintiffs also sought to attack Schafmeister's application on the ground (1) that it was not directed to intergranular corrosion and (2) that the plaintiffs had disproved Schafmeister's claims by tests which they had conducted. For these reasons, they claim priority whereby they are entitled to a decree in their favor. The attack on Schafmeister's application falls upon examination. The Schafmeister application discloses that his invention was directed at supplying an improved stainless steel for uses in which intergranular corrosion was the problem, such as in welding. The second attack falls for the reason that the trial court was at liberty to ignore the plaintiffs' ex parte tests which allegedly showed the inefficiency of Schafmeister's claims and formulæ. Carson v. American Smelting & Refining Co., 9 Cir., 4 F.2d 463, 465, 466. See cases collected in Steinfur Patents Corporation v. J. Meyerson, Inc., et al., D.C.E.D.N.Y., 56 F.2d 372, at page 379.

Coming to the main problem at hand, that of prior practice, we are bound to accept the findings of the trial court, for no clear error appears therein. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following § 723c. See, also, Stilz v. United States, 269 U.S. 144, 147, 46 S.Ct. 37, 70 L.Ed. 202; Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 312, 29 S.Ct. 495, 53 L.Ed. 805; Galion Iron Works & Mfg. Co. v. Beckwith Machinery Co., 3 Cir., 105 F.2d 941, 942. From an examination of the evidence, we can find no error in the following material findings of the trial court:

"1. Schafmeister's German application serial No. 18b K. 144.30 was filed in Germany on July 21, 1930. Schafmeister's application, serial No. 550,288 was filed in the United States Patent Office July 11, 1931. The German application and the United States application both disclose the inventions in issue in counts 1, 2 and 9.

"2. Becket and Franks had no conception of the inventions of the counts in issue until the latter part of 1931, at which time they first made a heat with the addition material 'substantially of Columbium' which resisted intergranular corrosion.

"3. Becket and Franks did not reduce to practice alloys proving resistance to intergranular corrosion within the range of carbon and the range of columbium specified in counts 1 and 2 and never reduced to practice a metal article which would prove resistant to intergranular corrosion within the ranges of carbon and columbium and tantalum specified in count 9.

"4. Becket and Franks did not successfully reduce to practice until after July 11, 1931.

"5. Becket and Franks were not diligent in reducing to practice until after July 11, 1931."

Having thus resolved the sequence of the events with respect to the practice of the invention by the respective parties, there is little of law to apply. The party to an interference who shows that he reduced his invention to practice before

the other is entitled to prevail. See Walker on Patents, Deller's Ed., § 102. Admittedly, Schafmeister filed his application first. He is therefore the senior party. Consequently, the plaintiffs had the burden of overcoming the presumption in favor of Schafmeister that the senior party first reduced the invention to practice. See Patent Office Rules 116 and 118, 35 U.S.C.A.Appendix; also Automatic Weighing Mach. Co. v. Pneumatic Scale Corp., Ltd., 1 Cir., 166 F. 288, 290, 291. The countervailing proofs offered at trial kept alive the presumption in the defendant's (i. e. the senior party's) favor.

■ Moreover, in order to reduce an alleged invention to practice, it is necessary for the inventor to conceive correctly his invention. The conception is the mental part of the process in arriving at invention and conception is evidentially established when it is demonstrated that sufficient reasoning has taken place so that the inventor fully understands and can describe the invention whereby it may be explained to others in the art. Townsend v. Smith, Cust. & Pat.App., 36 F.2d 292, 295; Walker on Patents, supra, § 200. That such is the situation cannot be established by the oral testimony of the conceiver. Walker on Patents, supra, § 201, and cases there cited. In view of the law bearing upon the case and the non-erroneous findings of fact made by the court below, we have no alternative but to affirm the decree. Schafmeister's application was filed in this country within twelve months of the filing of his German application. The effect of this was to clothe his invention with a constructive reduction to practice as of the date of the foreign application. Revised Statutes § 4887, 35 U.S.C.A. § 32. Phillips v. Carlsson, 55 App.D.C. 399, 3 F.2d 1018. As found by the court below, the plaintiffs are antedated by Schafmeister.

The appellants point out and stress that the counts in interference do not require (a) complete immunity to corrosion, (b) any specific ratio of columbium to tantalum, (c) with reference to counts 1 and 2, that tantalum need be wholly absent, and (d) with reference to count 9, any specification of what proportion of columbium to tantalum need be present other than that, together, they constitute from "0.3% to 2.5%" of the total. These points are immaterial to the matter fundamentally involved on this appeal. As to (a), complete immunity to corrosion is not in issue in this case. The court below refers specifically in its findings of fact to an alloy "which resisted intergranular corrosion", alloys proving "resistant to intergranular corrosion", etc. The remaining points, (b), (c) and (d), are no doubt urged upon us to impress the fact that the error in the plaintiffs' analysis is not in issue. That error is not in issue in the sense that an accurate analysis, per se, is required. However, the error in analysis does point to a procedure adopted by the plaintiffs whereby they set their course and travelled thenceforth in the dark. They acted upon the basis of an erroneous analysis, from which they claim prior reduction to practice. Apparently convinced of a necessity for accurate ratio in the added elements, the plaintiffs proceeded on a ratio basis. But, the ratio they claimed as inherent in their practice was error. Their practice was therefore a nullity.

The decree of the District Court is affirmed.