33 C.C.P.A.(Patents)

### DRAEGER et al. v. BRADLEY.
#### Patent Appeal No. 5137.

Court of Customs and Patent Appeals
May 7, 1946.

Rehearing Denied July 9, 1946.

See, also 150 F.2d 572.

W. E. Currie and P. L. Young, both of New York City, and W. F. Weigester, of Washington, D. C. (J. Cashman, of New York City, of counsel), for appellants.

Sol. Shappirio, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding Bradley priority in an interference proceeding, declared between applications, involving the following two counts:

"1. Process of producing alkymers from isoparaffins and olefins which comprises alkylating an isoparaffin with an olefin by contacting and agitating the olefin, isoparaffin and concentrated sulfuric acid catalyst and maintaining the molecular ratio of isoparaffin to olefin at the point where the olefin initially contacts the sulfuric acid catalyst at least about fifty to one.

"2. Process of producing alkymers from isobutane and butylene which comprises alkylating isobutane with butylene by contacting and agitating said butylene, isobutane and concentrated sulfuric acid catalyst and maintaining the molecular ratio of isobutane to butylene at the point where the butylene initially contacts the catalyst at least about fifty to one."

The questions presented before us do not require detailed analysis of the counts. The first count is directed to isoparaffins and olefins broadly. The second is limited to isobutane and butylene. Both counts recite the maintaining "at least about fifty to one" the molecular ratio of the substances

at the point of their initial contact with the catalyst.

The joint application (serial No. 238,966) of Draeger and Shewell was filed November 5, 1938. On January 3, 1939, there was filed a joint application (serial No. 248,928) in the names of Bradley and one Karl J. Korpi, and an interference (No. 78,868) was declared (in which two applications of other parties were involved) on December 6, 1940. Prior to the expiration of the time for filing preliminary statements Korpi filed an affidavit disclaiming inventorship, the joint application, serial No. 248,928, was converted, under the regular procedure of the Patent Office, into a sole application by Bradley, and the interference was reformed (under the same interference number) on February 19, 1941.

At some time during the proceedings the other two applications were eliminated from the interference and were not involved in the decision of the board here on appeal.

So, the controversy before us is limited to the Draeger and Shewell joint application on the one hand, and the Bradley sole application on the other.

■ As the junior party, it was incumbent upon Bradley (whose application was assigned to his employer, the Union Oil Company of California) to establish priority by a preponderance of the evidence. To that end evidence, hereinafter discussed, was introduced.

■ So far as disclosed by the record before us, Draeger et al. did not file a preliminary statement. They introduced no evidence of any character, and, therefore, are limited to the filing date (November 5, 1938) of their joint application.

Upon the record, the board held, in substance, (1) that Bradley had established conception of the invention "not later than March, 1938"; (2) that Bradley had not established actual reduction to practice and, consequently, was dependent on the constructive reduction to practice resulting from the filing of the application, serial No. 248,928, on January 3, 1939, but (3) that Bradley had proved diligence during the critical period, and on the basis of the findings of fact so made awarded priority to Bradley.

Before us counsel for Draeger et al. challenge the board's holding as to (1) Bradley's conception date and (2) its holding as to Bradley's diligence. Counsel for Bradley defends those holdings and, in addition, insists that, upon the record presented, Bradley should be awarded actual reduction to practice prior to the filing date of the Draeger et al. application.

The board, as is apparent from its decision, analyzed the record with great care, quoting much of the testimony upon which its finding of Bradley's conception was based; pointed out wherein it deemed the evidence insufficient to establish actual reduction to practice by Bradley, and recited in considerable detail the evidence upon which it based its finding of Bradley's diligence.

Upon the question of Bradley's conception the evidence consists solely of testimony which counsel for Draeger et al. stipulated with counsel for Bradley (or his assignee) would be given by Bradley himself and six other persons, if called to testify.

The several witnesses are described as follows in the decision of the board: "The junior party's [Bradley's] record consists of the stipulated testimony of seven witnesses, all employed by Union Oil Company of California, assignee of the Bradley application. Bradley was employed as a research chemist in the research department from April 27, 1931 to April 1, 1938 and as a technical assistant in the patent department between April 1, 1938 and February 17, 1939. Korpi worked as a research chemist in the research department between June, 1937 and January 3, 1939. Moulton and Vermeulen were both employed as research chemist in the research department until the filing date of the Bradley application, the former entering upon this capacity November 1, 1937 and the latter August, 1937. Bradley, Korpi, Moulton, and Vermeulen all worked under the direct supervision of Blount, who was research supervisor in the research department during the years 1937 through 1939. Parker was employed as a process engineer in the develop-

ment between April 25, 1938 and January 3, 1939. Lee has been working as a research chemist in the research department since 1932."

No documentary exhibits bearing upon the question of Bradley's conception were filed in support of the stipulated oral testimony and the lack of documentary evidence was emphasized before the board which stated: " * * * It is true that written records are a great aid in fixing the date and nature of a disclosure and that in a doubtful case the presence or absence of such records may be an important factor. However, documentary evidence is not essential to proof of conception and conception may be established by proper oral testimony alone. Clark v. Birdsey, 56 App.D.C. 136, 10 F.2d 1001, 1926 C.D. 199, 350 O.G. 687; Jardine and Jehle v. Long, 58 F.2d 836, 19 C.C.P.A., Patents, 1243, 1932 C.D. 493, 423 O.G. 933, 13 U.S.P.Q. 254. In the present case the stipulated testimony of four corroborating witnesses, Korpi, Blount, Moulton, and Vermeulen is completely consistent and was not attacked or weakened by cross-examination. Aside from the mere lack of written records, there is no reason for holding that this stipulated testimony is not credible evidence and this single deficiency alone is not fatal to Bradley's proof of conception."

In its decision the board quoted the pertinent stipulated testimony of Korpi, Blount, Moulton, and Vermeulen, and we here quote that of Blount: "Prior to March, 1938, said Bradley had carried out small scale laboratory experiments in the laboratory of Union Oil Company on the alkylation of isoparaffins, such as isobutane with olefins, such as butylene in the presence of concentrated sulfuric acid and during this period, said Bradley conceived and disclosed to him the idea of alkylating isobutane with butylene by contacting and agitating a mixture of butylene and isobutane with concentrated sulfuric acid while maintaining a molecular ratio of isobutane to butylene at the point where the butylene initially contacts the sulfuric acid at least about fifty to one."

The stipulated testimony of Korpi, Moulton, and Vermeulen, quoted by the board, is the same in purport as that of Blount.

The board's holding that conception may be established by proper oral testimony is, of course, amply supported by the authorities which it cited and it does not seem to us that Draeger et al., having stipulated as they did, are now in any position which warrants their challenge of the correctness of the board's finding. They, of course, were under no compulsion to enter into the stipulation. Had they not done so, undoubtedly it would have been necessary for Bradley and at least some of the corroborating witnesses to have been examined in the regular manner, in which event they could have been fully cross-examined.

It is true, as is suggested in the brief for Draeger et al. before us, that the stipulated testimony quoted by the board is "in language virtually identical to the language of the counts," and it is a fair assumption that the stipulation was entered into long after the time of the conception claimed by Bradley, but the fact remains that Draeger et al. did enter into the agreement as to what the witnesses would testify and so are bound by the stipulated testimony which, clearly, is sufficient to establish Bradley's conception prior to the entry of Draeger et al. into the field.

The evidence relating to Bradley's claimed reduction to practice is described by the board as follows: "The party Bradley's evidence of reduction to practice relates to forty-nine runs reported in weekly reports W.R. 1 to W.R. 44 inclusive and monthly reports M.R. 1 to M.R. 8 inclusive. The reports are adequately identified by Bradley and the corroborating witnesses Korpi, Moulton, Vermeulen, Blount, and Parker and the conduct of the operations reported therein is sufficiently described by the corroborating witnesses Korpi, Moulton, and Vermeulen."

Further, the board said: "In order to prove that these runs resulted in a reduction to practice Bradley must establish by sufficient observation and proper calculation that the molecular ratio of isoparaffin in general or isobutane in particular to olefin in general or butylene in particular at the point where the olefin or butylene initially contacts the sulfuric acid catalyst was maintained at least about fifty to one. The observations must be sufficient to permit of

proper calculation and any assumptions involved in the calculation must be warranted by the actual facts or by accepted scientific principles."

Following the foregoing, the board proceeded to analyze a number of the runs (it being conceded that many of them were unsuccessful) in the light of the stipulated testimony relative to the calculations, formulas, etc., concerning them, and, for the reasons stated by it, concluded that the proof was deficient as to any actual reduction to practice by Bradley, but upon the basis of runs, as shown in weekly and monthly reports during the critical period, held that he had established diligence.

As has been indicated, counsel for Bradley (or his assignee) contends before us that the evidence is sufficient to support an award of actual reduction to practice on his part prior to the filing date of the Draeger et al. application—that is prior to November 5, 1938.

Being an appellee, Bradley was entitled to make the contention (although he took no cross-appeal) and we have given consideration to the arguments concerning it, with the result that we are not persuaded that the board's holding concerning that phase of the controversy was erroneous. Since, however, we find ourselves in agreement with the board's holding upon the matter of Bradley's diligence, it is unnecessary to our decision to discuss in detail the matter of his alleged reduction to practice.

Draeger et al. contended below and here contend that the critical period with respect to diligence began just prior to October 29, 1938, the date on which the oath to the Draeger et al. application was taken, rather than just prior to November 5, 1938, the date of filing the application in the Patent Office. The contention was noted by the board but was not ruled upon because of its view that upon the record "the holding with respect to diligence will be the same no matter which date is treated as the beginning of the critical period."

The board based its finding of diligence upon various runs made at a pilot plant of Bradley's assignee, as shown by documentary evidence in the form of weekly and monthly reports filed as exhibits and explained in the stipulated oral testimony of various witnesses.

From the board's decision, we quote the following:

"According to Korpi's testimony additional runs were made on the following dates which were reported in the following Bradley exhibits:

| | | | | | | |
|---|---|---|---|---|---|---|
| 32 | October | 24, 1938 | W.R. 34, | M.R. 6 |
| 33 | October | 27, 1938 | W.R. 34, | M.R. 6 |
| 34 | October | 31, 1938 | W.R. 35, | M.R. 6 |
| 35 | November | 2, 1938 | W.R. 35, | M.R. 6 |
| 36 | November | 11, 1938 | W.R. 36, | M.R. 6 |
| 37 | November | 17, 1938 | W.R. 37, | M.R. 7 |
| 38 | November | 21, 1938 | W.R. 38, | M.R. 7 |
| 39 | November | 30, 1938 | W.R. 39, | M.R. 7 |
| 40 | December | 7, 1938 | W.R. 40 | |
| 41 | December | 12, 1938 | W.R. 41, | M.R. 8 |
| 42 | December | 15, 1938 | W.R. 41, | M.R. 8 |
| 43 | December | 16, 1938 | W.R. 41, | M.R. 8 |
| 44 | December | 19, 1938 | W.R. 42, | M.R. 8 |
| 45 | December | 22, 1938 | W.R. 42, | M.R. 8 |
| 46 | December | 28, 1938 | W.R. 43, | M.R. 8 |
| 47 | December | 31, 1938 | W.R. 43, | M.R. 8 |
| 48 | January | 3, 1939 | W.R. 44, | M.R. 8 |
| 49 | January | 5, 1939 | W.R. 44, | M.R. 8 |

Bradley Exhibits M. R. 6, 7, and 8 are entitled monthly reports for the months of October, 1938; November, 1938; and December, 1938 and January, 1939. Bradley Exhibits W. R. 34 through 44 are weekly reports for each of the weeks from the week ending October 28, 1938 to the week ending January 6, 1939 inclusive. The reports were identified not only by Korpi but also by Bradley, Moulton, and Blount. Korpi, Moulton, and Blount also testified concerning the work reported in these documents. All this evidence shows diligence during the critical period in attempting to reduce to practice the invention here in issue, even though the proof is deficient as to actual reduction to practice. It may be noted that the reports include calculated data as to volumetric reaction zone ratios of isobutane to olefins for all runs except 33, 34, and 40. On the basis of this evidence, the party Bradley is deemed to have made the required showing of diligence."

We concur with the decision of the Board of Interference Examiners upon all phases of the controversy presented, and its decision is affirmed.

Affirmed.