37 C.C.P.A.(Patents)

## BOTNEN v. DORMAN.

Patent Appeals No. 5612.

United States Court of Customs and Patent Appeals.

Argued May 6, 1949.

Decided Sept. 30, 1949.

Rehearing Denied Jan. 31, 1950.

Bernard Wohlfert, Washington, D. C., for appellant.

Myron J. Dikeman, Detroit, Mich., for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

GARRETT, Chief Judge.

This is an appeal in an interference proceeding in which the Board of Interference Examiners of the United States Patent Office awarded priority to the party Dorman, the award being based solely on alleged lack of diligence on the part of the party Botnen during a portion of the critical period.

The party Dorman also filed a paper purporting to be a notice of appeal in which there were set forth alleged errors in rulings of the board adverse to him as to his date of conception.

The subject matter involved relates to mufflers or silencers located in the exhaust pipe of combustion engines to deaden the noises resulting from the escape of gases from the pipe.

Botnen's specification says of his muffler: "more particularly it is directed to a muffler for use on airplane engines." However, it is not so limited in either the specification or the counts. Dorman's specification recites that his muffler can be "easily and efficiently installed on any engine unit" —meaning, we suppose, any internal combustion engine unit.

We deduce from the record, although it is not distinctly so stated therein, that claims which subsequently became the counts were formulated by an examiner and suggested to the parties.

As originally declared, the interference involved four counts, but it was dissolved as to count 4 upon motion of the party Botnen.

Count 1 is fairly illustrative: "1. A muffler for exhaust gases comprising an outer casing provided with inlet and discharge openings and a plurality of sets of parallelly-arranged Venturi tube elements mounted in spaced relation within said casing for breaking up said exhaust gases into a plurality of streams having different speeds of flow."

The Botnen brief states: "* * * The mufflers disclosed by both parties comprise a plurality of sets of venturis spaced apart longitudinally within a cylindrical casing or container provided with inlet and outlet ports in opposite end walls thereof. Each set comprises two or more venturis nested concentrically one within the other. The exhaust gases entering the casing at one end pass through the passageways provided by the nested venturis and are broken up into a plurality of streams having different velocities. Alternate sets may be provided with an odd number of venturis in each set."

No further description is required by the issues presented.

The party Dorman is the senior party, his application, Serial No. 363,861, having been filed November 1, 1940. The Botnen application, Serial No. 367,720, was filed November 29, 1940.

The record here discloses that the party Botnen, at the time of his activities in connection with the invention, was in the military service of the United States, being a sergeant in the 21st Infantry, and that he was located at Schofield Barracks, Territory of Hawaii. His application was prosecuted by the Patents Section, Office of the Judge Advocate General, War Department, and in the interference proceeding he was represented by counsel from the United States Department of Justice.

In the preliminary statement of Botnen it is asserted: "* * * he made written description, drawing, disclosure to others, and reduction to practice of the invention all within the period extending from the first of November 1937, to the end of July 1939, inclusive, and made other and further description, drawings, disclosure to others and reduction to practice at various times thereafter; that he began exercising reasonable diligence in adapting and perfecting the invention immediately upon his conception thereof in the period above mentioned; * * *."

The board states that Botnen was unable to give any more definite dates, "being in the military service of the United States at

the time the preliminary statements were due."

Dorman, in his preliminary statement, alleged conception on or about July 1938; embodiment in a full size machine on or about December 1938; beginning reasonable diligence on or about December 1938; explanation to others on or about the last part of April 1939; successful operation of the machine on or about November 1939; and making drawings on or about March 6, 1940. It was stated that "no written description of the invention was made prior to the preparing of the application filed herein."

Testimony was taken and briefs filed on behalf of both parties. It is noted that there was no appearance for Dorman at the taking of the testimony on behalf of appellant. Before us a brief was filed on behalf of Dorman, but there was no oral argument on his behalf. Both brief and oral argument were presented on behalf of appellant.

In addition to the oral testimony, a number of exhibits were filed on behalf of both parties. All those on behalf of Botnen are documentary, as are all but two of those on behalf of Dorman. One of the two physical exhibits of Dorman is a muffler which he testified was made in 1937; the other a muffler which he testified was made in 1938. There are photographs of other mufflers not particularly relied upon except for a showing of activity.

The board held that Dorman's testimony was not sufficiently corroborated as to either conception or reduction to practice to meet the requirement of law for corroboration and entitle him to dates claimed in his preliminary statement. So, he was restricted to his filing date of November 1, 1940, for both conception and reduction to practice.

It is deemed proper to discuss and pass upon certain of the questions sought to be raised by Dorman before considering the Botnen record.

As hereinbefore stated, Dorman, although the winning party below, filed a notice of appeal. We assume it was filed upon the theory that he could not hope to obtain a more favorable decision here than was rendered below without appealing. However, in the notice it is said: " * * * appellee adds the following reasons and assignment of errors to be reconsidered with those assigned by appellant, in defense thereof and *in support of the decision as now rendered.* * * *." (Italics ours.)

The italicized clause without more would seem to indicate that appellant was merely defending the board's finding, but reason of appeal No. 1 alleges error on the part of the board "relating to claimed dates stated in the preliminary statements of the respective parties" and reasons Nos. 2 and 3 allege error in the finding with respect to Dorman's conception date only.

Such is the substance of Dorman's reasons of appeal *as stated in the record,* but, *in the brief* on his behalf, under the head of "Errors relied upon," a different phraseology is used and issues are raised, particularly with respect to what is referred to as corroborating evidence for the party Botnen whose testimony was not taken in the trial of the case, which issues are not shown to have been raised below and which were not stated in Dorman's reasons of appeal in his notice of appeal to us.

For example, it is alleged in paragraphs 3 and 4 of "Errors relied upon" by Dorman as follows:

"3. That the Board of Examiners of Interference erred in admitting corroborating evidence, and unidentified letters for the party Botnen, when said party Botnen had never testified to anything, or made no claims to support, or require corroboration.

"4. The Board of Examiners of Interference erred in accepting, considering, and ruling on mere corroborating evidence of Botnen alone, when the actual primary testimony and claims of Botnen, to be corroborated, were never presented. Botnen did not testify. The corpus delicti was absent."

The matters so complained of were introduced in evidence during the taking of depositions in support of the Botnen application when, as has been stated, Dorman was not represented. So, there was no

cross-examination of the Botnen witnesses nor any objection made to the filing of the exhibits. There is nothing in the record to show that any motion was ever made to strike the "corroborating evidence" before the Board of Interference Examiners, nor is it shown that any objection to its consideration by the board was ever made until it was embraced in the brief before us filed long after the appeal to us had been taken.

■ Even assuming that the evidence complained of should not have been admitted (and we make no ruling on that point), we think appellee is too late with his objections to it. The failure of Botnen to testify is hereinafter alluded to again.

So far as Dorman's allegations with respect to being entitled to earlier dates for conception and reduction to practice (only conception being designated in the record) than those named in his preliminary statement is concerned, the claim (which has some support in his own testimony) is that, subsequent to the filing of his preliminary statement, papers were found which had been lost or mislaid and possibly—the testimony is not altogether clear—some physical devices in the form of mufflers, which would sustain a claim of conception and of reduction to practice as early as 1937 and again in 1938.

■ It is not clear just when the discovery of such evidence was made, but it is indicated that it was found too late to move for an amendment of the original preliminary statement (see former Patent Office Rule 113—present Rule 22, 35 U.S.C.A. Appendix), and what is really sought is, in effect, that this court now amend it or treat it as amended. This we have no authority to do.

■ The board, citing Brydle v. Honigbaum, 54 F.2d 147, 19 C.C.P.A., Patents, 773, correctly held that testimony and exhibits tending to prove earlier dates than those named in preliminary statements are admissible, but that they will not establish any date or dates prior to the date or dates alleged in such statements.

It is urged in the brief for Dorman: "While the rule 110 [present Rule 223b] provides that no earlier date can be sustained than is disclosed in the preliminary statement, yet where these dates were necessarily filed solely from memory, and the actual data and records were lost at the time, and no injury is wrought to the opposing party, and where this original data, dates and evidence which had long since been discarded and stored away, was later discovered and would establish the real and actual date of conception, it is contended that the technical rule should be waived, and the actual correct date be admitted. * * *"

A question analogous to that under discussion arose before us in the case of Borm v. Champayne, 102 F.2d 862, 867, 26 C.C. P.A., Patents, 1095, and was discussed elaborately by us, speaking through Hatfield, J., with citations to numerous decisions directly in point on different phases of that (and, we may add, the instant) controversy. We there pointed out that Patent Office Rule 110, which was a pertinent rule in force during the proceedings in this case in the Patent Office (it is now Rule 223(b), provided "that if a party 'prove *any date* earlier than alleged in his preliminary statement, such proof will be held to establish *the date alleged* and none other." (Italics used there.) We also there paraphrased Rule 113, making what was deemed to be appropriate comment concerning it, and said further: " * * * we, in effect, are asked to suspend, for the purpose of this decision, the operation of applicable principles of law in order that appellant may be awarded dates for conception and reduction to practice of the invention earlier than those to which appellant thought, or, at least, stated, he was entitled at the time he filed his preliminary statement. To that request, we must decline to accede."

■ The evidence under discussion may be looked to in determining whether it supports the dates claimed in the preliminary statement (and, as held in effect in the case of Draeger et al. v. Bradley, 156 F.2d 64, 33 C.C.P.A.,Patents, 1130, 1135, appellee was entitled to urge that without taking a cross appeal) but appellee may not, in any

event, under the state of the pleadings here, be awarded any earlier date or dates.

The board examined the evidence and found that there was a failure of corroboration of the testimony of Dorman, and hence no support for a holding that he would be entitled to an award of conception or an award of reduction to practice on even the respective dates claimed for those acts in his preliminary statement.

In consequence, Dorman was limited to the filing date of his application for both conception and reduction to practice, and the decision awarding him priority is predicated solely upon the board's finding of lack of diligence on the part of Botnen during a critical period.

■ Before discussing the Botnen record, it should be stated that we find no reason which, under the well settled principles of patent law, would justify a decision that the board erred in holding that there was lack of corroboration of Dorman's testimony. It made a very complete analysis of the exhibits introduced on his behalf and in its factual aspect its finding was much like that of the finding of the board in the Borm v. Champayne case, supra. The only witness called on behalf of Dorman was his son, all of whose pertinent testimony is quoted literally in the board's decision. It is clear to us that he does not corroborate to the extent required by law either the oral testimony of the father or the dates, etc. of the exhibits in evidence.

■ It is no reflection upon the truthfulness of either the father or son to hold as the board held. From time immemorial it has been the rule in patent law that there must be corroboration of the testimony of one claiming an invention. Moreover, what constitutes corroboration has been defined by the courts, both affirmatively and negatively, in many, many decisions and in every standard text book on patent law which we have examined. The board quotes from this court's decision in the case of Akers v. Papst, 113 F.2d 136, 140, 27 C.C.P.A.,Patents, 1400, the following: "* * * Such corroboration in interference proceedings is a positive rule of patent law. George v. Karsel, 111 F.2d 148,

27 C.C.P.A.,Patents, 1063; Janette v. Folds et al., 38 F.2d 361, 17 C.C.P.A., Patents, 879; Fausek et al. v. Vincent, 92 F.2d 909, 25 C.C.P.A., Patents, 770."

In view of our conclusion relative to the situation legally of the party Botnen, it is unnecessary that we dwell further upon that of Dorman.

The board awarded Botnen a conception date of "November 13, 1939, the date proven for disclosure to others," but, pointing out that the Botnen brief before it conceded that his proofs do not show reduction to practice prior to his filing date, November 29, 1940, restricted him to that date for reduction to practice. So, the determining factor became that of Botnen's diligence.

The board said: "The proven date of Dorman's entry into the field, being his record date November 1, 1940, the Botnen diligence must commence from a time immediately prior to November 1, 1940, and must continue until his constructive reduction to practice on November 29, 1940."

The board then found from its analysis of the record that Botnen should be awarded diligence from November 1, 1940, the filing date of Dorman, to November 29, 1940, when the Botnen application was filed, but held that diligence on the part of Botnen had not been established during the period just preceding November 1, 1940. Hence, priority was accorded the party Dorman.

It is thought that it may conduce to an understanding of the case briefly to review the history of the incidents relating to the Botnen application.

As has been stated, he was in the military service of the United States during the period of such activities as he engaged in respecting the device involved. As an enlisted man, he was entitled, 35 U.S.C. § 45, 35 U.S.C.A. § 45 "subject to existing law" (italics ours), to have a patent granted him without the payment of any fee, if the proper authority certified that his invention was used or liable to be used in the public interest, it being required that he should state in his application that the invention might be used by or for the Government for gov-

ernmental purposes without the payment to him of any royalty thereon.

Just here it may be stated that we do not find in the record any certification by the head of the War Department, or any other official, as to the muffler being used by the Government, nor does the application state that it may be manufactured and used by or for the Government without the payment of any royalty. However, no question or objection has been raised before us on that account, and our concern is with the question of priority to which those matters have no direct application. We allude to them, however, because of a contention on behalf of appellant which is hereinafter discussed.

The first activity of the party Botnen disclosed in the record before us is found in a letter dated October 30, 1939, addressed to the Judge Advocate General of the Army, beginning, "Request that I be granted a patent on an exhaust muffler of the following description: * * *." It was accompanied by a drawing. Concerning these the board made the following statement with which we agree:

"* * * It [the letter] was received in the Judge Advocate's office on November 18, 1939. This letter was accompanied by a drawing to which the letter refers. Botnen Exhibit 2, which appears to bear Botnen's signature, was put in evidence as being that drawing. The Dorman brief (page 7) concedes that Botnen conceived the invention about this time and that 'thereafter [he] immediately delivered a drawing and description to the Judge Advocate's Office dated October 30, 1939, as Exhibit 1 with drawing Exhibit 2.'

"Drawing Exhibit 2 corresponds to Fig. 1 of the Botnen application. This letter adequately described the invention, and requested that the invention be patented. * * *"

There appears of record as appellant's Exhibit 5 a letter certified to have been dated November 20, 1939, from the Chief of the Patent Section of the Judge Advocate General's office addressed to Botnen advising that an investigation of the Patent Office records failed to disclose any patents which anticipated the exact structure of appellant and that in due course an application for patent would be prepared for execution.

The next pertinent matter appearing of record is a letter written to Botnen by the Acting Chief of the Patent Section of the Judge Advocate General's office under date of May 31, 1940, stating that the Patent Office had indicated an intention to call for a model upon the official filing of the application, inquiring whether a model had ever been constructed, making pertinent inquiries as to when it was put in operation and tested, and the results of tests made on it, together with dates and names of witnesses. It was requested that if no model had been made and tested such action be taken and the results communicated to the office of the Patent Section. In the last paragraph of the letter it was said: "4. Further action in the matter of preparing an application for patent will be withheld pending receipt of the above information."

Next in chronological order is a letter under date of June 12, 1940, from Botnen to the Judge Advocate General, evidently written in answer to that of May 31, 1940, stating that no complete model was constructed, but asserting that the "simple laws of physics would quickly show the practicability of the idea," and making certain explanations.

Nothing further as to any activity on the part of Botnen appears until he executed the application, making oath thereto before a notary public in the Territory of Hawaii November 16, 1940, which was fifteen days after the filing date of Dorman.

The letter forwarding the application to him for execution bears date of November 1, 1940, which by a coincidence was the filing date of Dorman. This, it will be observed, was almost five months after Botnen's letter of June 12, 1940.

Incidentally, it may be said that the letter forwarding the application stated that a license to the United States Government was being forwarded for his signature. There is nothing in the record certified to us showing that he ever executed such license.

Botnen did not testify in the case. Therefore, there was no testimony by him as the inventor to be corroborated by the testimony of others, or by other competent evidence.

The Patent Section of the Judge Advocate General's office seems to feel that it has been substituted, in a way, for the party Botnen, and it is asserted in the reasons of appeal and actually contended in the brief that Botnen is not obliged to prove that he was diligent in order to prevail. This is predicated upon the theory that Botnen had granted an interest in his invention to the Government. Whether this contention was made before the board cannot be determined from the record before us. There is nothing in the board's decision to indicate that it was presented before it. Had it been, that tribunal might have cited the decisions of this court in the case of Krebs et al. v. Melicharek, 97 F.2d 477, 25 C.C.P.A., Patents, 1362, 1366; and Crane et al. v. Carlson, 125 F.2d 709, 29 C.C.P.A., Patents, 879, 886, in which we held directly contrary to the contention for appellant here made.

It is a fact, as hereinbefore has been indicated that the record before us does not show that Botnen had granted any interest to the Government. It is clear that the proviso of 35 U.S.C. § 45, 35 U.S.C.A. § 45, was not complied with in the application and there is no evidence that he signed and returned the license papers forwarded to him with the application, but even if the statute had been complied with the "interest" conveyed was contingent upon the granting of a patent, and the granting of a patent is always contingent upon the requirements of the law being met upon all points, including diligence when diligence becomes involved. Diligence may become as important in a case as conception or reduction to practice. It is not supposed that it would be seriously contended that the Government itself could obtain a patent for an enlisted man or employee under "existing law", 35 U.S.C. § 45, 35 U.S.C.A. § 45, without a reduction to practice by such employee. In its sovereign capacity it has fixed the conditions upon which a patent

shall be granted. In our opinion, it may not now invoke its sovereign authority to obtain a patent in which it has only a contingent interest, except under existing law. What it might do by some new legislative act need not be considered here.

It is in evidence, through appellant's Exhibit 8, that a board from the Patent Office Section as early as November 18, 1939, pronounced appellant's device patentable and the Chief of the Patent Section expressed that view in the letter of November 20, 1939.

So far as any actual diligence looking to constructive reduction to practice by the filing of an application is concerned, we find nothing which would justify us in reversing the factual conclusions of the well considered decision of the Board of Interference Examiners.

The testimony of five employees in the Patent Section of the Judge Advocate's office was taken. Such testimony related mainly to the policy relative to the order in which applications for patent were filed by that office. The testimony was minutely analyzed in the board's decision, and it was held that the proofs do not show that the policy of preparing applications covering inventions "in the order in which they were received" was followed with respect to Botnen's application. The following comment of the board is deemed quite pertinent: "* * * the failure to put the docket [of cases submitted to the office] in evidence, the failure to state what the entries in this docket show, the failure to give the date of the completion of the application, or any specific dates on which any work on the application was done, raises the presumption, that if the evidence on this point was produced, it would have been unfavorable. Huff v. Gulick, 179 O.G. 579; 38 App.D.C., 334, 1912 C.D. 488, wherein the Court said: 'Having the evidence within his control, and not producing it, it must be presumed that it was unfavorable to his case.'"

We are not convinced of error in the conclusion of the Board of Interference Examiners and its decision is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.

*On Petition for Reconsideration and Rehearing*

GARRETT, Chief Judge.

Following the circulation to the interested parties of our opinion stating the reasons for our decision in this case (which opinion, in conformity with our practice, was withheld from publication pending requests for reconsideration) there was filed on behalf of appellant a request "that the opinion of the Court in this case be reconsidered and that rehearing be granted."

The court has given careful consideration to the request.

In the course of the opinion we say: "Just here it may be stated that we do not find in the record any certification by the head of the War Department, or any other official, as to the muffler being used by the Government, *nor does the application state that it may be manufactured and used by or for the Government without the payment of any royalty.*" (Italics new here.)

With respect to the italicized clause we erred. The application filed on behalf of Botnen states: "This invention described herein may be manufactured and used by or for the Government for governmental purposes, without the payment to me of any royalty thereon."

The writer of the opinion unhappily overlooked that statement in the application, and in a subsequent part of the opinion reiterated the thought originally expressed, saying: "It is a fact, as hereinbefore has been indicated, that the record before us does not show that Botnen had granted any interest to the Government. It is clear that the proviso of 35 U.S.C. § 45 [35 U.S.C.A. § 45,] was not complied with in the application * * *."

35 U.S.C. Sec. 45, 35 U.S.C.A. § 45, reads: "The Commissioner of Patents is authorized to grant, subject to existing law April 30, 1928, to any officer, enlisted man, or employee of the Government, except officers and employees of the Patent Office, a patent for any invention of the classes mentioned in section 31 of this title, without the payment of any fee when the head of the department or independent bureau certifies such invention is used or liable to be used in the public interest: *Provided,* That the applicant in his application shall state that the invention described therein, if patented, may be manufactured and used by or for the Government for governmental purposes without the payment to him of any royalty thereon, which stipulation shall be included in the patent."

It is obvious that the proviso of 35 U.S.C. Sec. 45, 35 U.S.C.A. § 45, *was* complied with, and the writer of the opinion was mistaken in stating that it was *not.* The oversight which resulted in the error is greatly regretted.

However, our decision affirming that of the Board of Interference Examiners did not result from the error so made. We agreed with the Board that diligence on the part of Botnen had not been established just preceding November 1, 1940, and this was decisive of the case.

We have studied our original opinion in the light of the arguments presented with the petition for reconsideration and rehearing, but find no reason for changing our original conclusion.

This statement has been written to correct the error noted, but we adhere to our original decision and the petition for rehearing is denied.